IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE JO MENDENHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-222-SPS |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Vickie Jo Mendenhall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the most recent administrative hearing (Tr. 506). She completed tenth grade and has previously worked as a hair stylist (Tr. 240, 484). The claimant alleges that she has been unable to work since an amended alleged onset date of October 23, 2017, due to severe depression, anxiety/panic attacks, back problems, and headaches (Tr. 239).

## Procedural History

On July 20, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 29, 2018 (Tr. 13-21). The Appeals Council denied review, but this Court reversed and remanded the decision in Case No. CIV-19-339-RAW-KEW following an unopposed motion to remand (Tr. 539-544). On remand ALJ Laura Roberts held a second administrative hearing and again determined that the claimant was not disabled as of her amended alleged onset date of October 23, 2017 (Tr. 467-486). The Appeals Council again

denied review, so ALJ Roberts's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but that she could not climb ropes/ladders/scaffolds, and she could only occasionally climb ramps/stairs, stoop, crouch, crawl, kneel, and balance on uneven, moving, or narrow surfaces. Additionally, she found the claimant was able to understand, remember, and carry out simple and detailed (but not complex) instructions, *i. e.* she could perform a specific vocational preparation ("SVP") of 1-4 tasks; she could interact with co-workers and supervisors, but could not interact with the general public (although contact with the public is okay); she should not do tandem or teamwork; and she could adapt to occasional changes in work processes (Tr. 474). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i. e.*, merchandise marker, production assembler, and housekeeping cleaner (Tr. 484-486).

## Review

The claimant contends that the ALJ erred by (i) improperly evaluating the medical source evidence at step four, and (ii) failing to properly identify jobs she can perform at step five. The Court agrees with the claimant's first contention, and the ALJ's decision should be reversed and the case remanded for further proceedings.

-4-

The ALJ found at step two that the claimant had the severe impairments of sciatica, cervical and lumbar degenerative disc disease with radiculopathy, migraine headaches, PTSD, major depressive disorder, and generalized anxiety disorder (Tr. 471). The relevant medical evidence reflects that the claimant received treatment at the Ranas Family Medical Center, and her diagnoses included PTSD, low back pain, and migraines, as well as hypertension and osteoarthritis (Tr. 338-393). In 2017, treating physician Dr. Aileen Green, M.D., noted at a new patient exam that the claimant reported severe depression but had never seen a psychiatrist. Dr. Green referred her to a psychiatrist for evaluation and medication management (Tr. 416-417).

On July 19, 2018, the claimant presented to St. Francis hospital with an altered mental status. She was assessed with an acute kidney injury, dehydration, and lethargy (Tr. 733-734). She was discharged the next day after being provided saline. Upon discharge, her kidney injury, dehydration, and lethargy were noted to be resolved, and her anxiety was noted as controlled (Tr. 733).

Dr. Mark Rogow, M.D. also treated the claimant, including referring her for an MRI of the lumbar spine (Tr. 439). In August 2018, treatment notes indicate the claimant was positive for, *inter alia*, change in mood, depression, sadness interfering with function, and anxiety, and he called counselors to get in touch with her (Tr. 440). At a September 11, 2018 appointment, Dr. Rogow noted that the claimant's depression persisted and that she was seeking disability; he noted she was seeing a counselor and was going to refer her to a psychiatrist (Tr. 455). He stated that the claimant was, in his opinion, totally and permanently disabled due to her depression (Tr. 455). Scans conducted on October 17,

2018 reveal a largely normal cervical spine and transitional lumbosacral segment with S1 posterior neural arch defect of the lumbar spine, but no acute abnormality or significant degenerative changes (Tr. 457). Dr. Rogow's notes again reference the claimant's depression and anxiety in January-February 2019, but more recent treatment notes from March through June 2019 mention stressors and the claimant's anxiety disorder, but only list depression as part of her past medical history (Tr. 704-731).

On October 17, 2018, Dr. Rogow completed an RFC assessment of the claimant, in which he indicated he had been treating the claimant about a year for depression/anxiety, migraines, cervical and lumbar disc disease, and hypertension (Tr. 458-463). He also noted that she lived with and cared for her disabled daughter, and that the claimant had social phobias and panic attacks (Tr. 458). He assessed her with major depression (severe), generalized anxiety disorder, cervical and lumbar disc disease and radiculopathy, and migraine headaches, and referred to cervical and lumbar x-rays demonstrating degenerative joint disease of the spine (Tr. 458). He indicated that the claimant could stand for less than one hour, and that she could sit approximately six hours with periods of stretching (Tr. 459). Additionally, he indicated she could only walk 100 feet; rarely reach up or down; frequently reach down to waist level, carefully handle objects, and handle with fingers; and that she could lift/carry five to ten pounds during an eight-hour period (Tr. 460). He noted she could only bend, squat, and twist with great difficulty; that panic attacks would prevent her from traveling alone; and that pain affected her greatly at least part of each day (Tr. 461). Finally, he indicated that the claimant was "too depressed to concentrate," and that he "never" expected her to be able to return to work (Tr. 462).

The claimant also received treatment at Stigler Health and Wellness, where treatment notes from 2016 through 2020 also reflect medication management of her depressive disorder, but note additional diagnoses of uncomplicated opioid dependence and PTSD; the notes reflect she understood her therapeutic regimen and repeatedly refused a reduction in dosage (Tr. 778-844).  On February 16, 2021, Ms. Shelly Boland, LMSW, MSW, wrote a letter stating that the claimant had been seen four times since January 4, 2021 for her PTSD and was working on decreasing her depressive symptoms and lowering her anxiety level from past trauma "so that her daily life functioning is not impaired" (Tr. 845).  Ms. Boland stated that, "[a]t this time, client has made little to no progression with her current goals of lowering depressive/anxiety symptoms," and noted she was scheduled for another appointment within seven days (Tr. 845).

On October 23, 2017, Dr. Christopher Sudduth conducted a physical examination of the claimant (Tr. 398-405).  He noted that she had some reduced range of motion of the back and pain with range of motion, as well as a bilateral positive straight leg raise tests (Tr. 402-405).  He found she was alert, oriented, and had good eye contact, and that she had 5/5 muscle strength (Tr. 400).  He noted she could button and unbutton a shirt; pick up and grasp a pen and write a sentence; and lift, carry, and handle personal belongings; but that she was unable to squat and rise from that position, although she was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table (Tr. 400-401).  Additionally, she could heel/toe walk with ease, but her tandem walking was abnormal and she could stand but not hop on either foot bilaterally (Tr. 401).

On November 8, 2017, Dr. Kenny A. Paris, Ph.D. conducted a mental status/diagnostic examination of the claimant (Tr. 407-412). The claimant had average functioning in most areas of the WAIS exam, including comprehension, arithmetic, and immediate recall, but she had below average concentration (digits forward/digits backward) (Tr. 410). He found she had an average intellectual functioning, and assessed her with major depressive disorder (recurrent, moderate), as well as PTSD (chronic) (Tr. 411). He stated that the claimant's ability to concentrate was based on her performance on memory tasks, performing verbal mathematical operations, her responses to general questions, and her ability to track the conversation and stay on task when speaking (Tr. 411). He found her memory skills to be adequate, and that she had no problems with persistence and pace (Tr. 411). Dr. Paris noted that she had a purported combination of physical and mental impairments, but that the effect of physical problems on her ability to function was beyond the scope of the exam (Tr. 411). Based solely on the psychological standpoint, he stated that she had a below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors and co-workers (Tr. 411).

As to her physical impairments, state physicians determined initially and upon review that the claimant could perform light work with no additional limitations (Tr. 79-80, 110-111). As to her mental impairments, state reviewing physicians found initially and upon review that the claimant had moderate limitations in the three typical areas of: ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 80-81, 111-112). They concluded that

the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 82, 113).

In her written opinion at step four, the ALJ summarized the claimant's testimony from the administrative hearing, as well as the medical evidence in the record (Tr. 474-484). In particular, the ALJ thoroughly summarized Dr. Rogow's RFC assessment *and* his treatment notes, Ms. Boland's letter, and the reports from Dr. Sudduth and Dr. Paris (Tr. 478, 480-481). She assigned "some weight" to the state reviewing physician opinions as to the claimant's physical impairments, agreeing they supported light work, but found further postural limitations due to her neck pain and low back pain treatment (Tr. 482). She then assigned significant weight to the state reviewing physician opinions as to the claimant's mental impairments, noting that that the record supported limiting the claimant to simple and some complex tasks, but that she limited the claimant to occasional interaction with co-workers and supervisors because "superficial" was not a vocationally-defined term (Tr. 482). The ALJ noted that Dr. Sudduth had not provided a specific opinion as to the claimant's limitations, but stated that she had considered his report, acknowledging that the claimant had moderately decreased range of motion of the lumbar spine and reiterating his findings that, *inter alia*, she had a steady gait and did not use an assistive device, she could heel/toe walk but tandem walking was abnormal, and she was unable to squat and rise from that position (Tr. 482). She assigned "significant weight" to Dr. Paris's assessment of the claimant, finding it consistent with her treatment for symptoms of mental disorders (Tr. 483). In the ALJ's recitation of Dr. Paris's report, she indicated that Dr. Paris stated that the claimant could "perform *adequately* in most job

situations, handle stress of a work setting, and deal with supervisors and co-workers," although he actually stated that this was a *below average* ability, and that, *inter alia*, her ability to function appropriately socially and emotionally was adequate (Tr. 411, 483). Additionally, she did not acknowledge Dr. Paris's finding of below average concentration (Tr. 410-411). As to Dr. Rogow, the ALJ gave "little weight" to his statement (found in the treatment notes) that the claimant was permanently and totally disabled, noting that such a finding is reserved to the Commissioner and that he provided no indication with regard to specific limitations or capabilities (Tr. 483). As to his RFC assessment, she also gave it "little weight," stating that it was not supported by his progress notes. She further noted that he based his opinion on a finding that the claimant has degenerative disc disease of the cervical and lumbar spines, but that an October 2018 imaging showed no significant degenerative changes and she had full range of motion at a July 2018 appointment. She did not assess his opinion as to his treatment notes regarding her depression and anxiety (Tr. 483). She thus found Dr. Rogow's opinion was not supported by the medical record (Tr. 483-484). Finally, the ALJ noted that, while Ms. Boland had not provided an opinion, she had likewise considered her letter in making the RFC assessment (Tr. 484). The ALJ then concluded that the claimant was limited by her impairments, but that they could be adequately accommodated, and she was therefore not disabled (Tr. 484-486).

The claimant first contends that the ALJ failed to properly assess the opinion evidence in the record, rejecting some opinions and only assigning some weight to others, leaving questions as to how she assessed the claimant's RFC. She contends the ALJ ignored her "consistent physical history" of back and neck pain, as well as her severe

depression. The Court agrees the ALJ erred in her analysis.³ "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added] (*citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)). Medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (*quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. The pertinent factors for evaluation of *all opinion evidence* include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is

---

³ Here, the claimant's applications for Title II and Title XVI benefits were filed July 20, 2016. The Court recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 404.1520c, which is not applicable here.

rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301 (*citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001)). In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The claimant contends that the ALJ's assignment of "little weight" to Dr. Rogow's opinion, as well as only "some weight" to the state reviewing physician opinions and no weight to Dr. Sudduth's report (which provided no opinion) leaves questions as to how she assessed the claimant's RFC. Here, it *is* clear that the ALJ failed to properly assess Dr. Paris's opinion when she incorrectly recited his findings as to her ability to perform, handle stress, and deal with co-workers and supervisors, *and* when she failed to acknowledge the below average finding in concentration. Additionally, the ALJ wholly failed to properly apply the factors to Dr. Rogow's RFC assessment, simply asserting that it was not consistent with Dr. Sudduth's physical consultative findings and not even discussing how it applied to the claimant's mental impairments. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (*citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984)).

The Court also notes that although an ALJ is not required to give controlling weight to an opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled'

or 'unable to work' does not mean that we will determine that you are disabled."), she *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) (The ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") (*quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3). Here, the ALJ should have assessed this opinion by applying the appropriate factors. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927].") (*quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003)). On remand, the ALJ should properly address this evidence.

Because the ALJ failed to properly evaluate the opinion evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in an adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The

decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**